UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Gauthier, Edward Gauthier,

      Plaintiffs,

          v.                              Civil Action No. 2:13-cv-187

Troy Kirkpatrick, Barre, Vermont,
Weiland Ross, Judge Howard VanBenthuysen,
Newport Correctional Facility, Rick Wade,
Michael Mathieu, Nicholas Fortier,
Jeff Poginy, Thomas Kelly, Megan Campbell,
State Trooper Leblanc, State Trooper Maurice,
Bonnie Goode, and Tiffany Stark,

      Defendants.

## <u>OPINION AND ORDER</u>
(Docs. 34, 35, 49, 50)

      Plaintiffs David Gauthier and Edward Gauthier, proceeding *pro se*, bring this suit

under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and the Fourth, Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution against Defendants Tiffany Stark, the City

of Barre and its "municipal judges," the "Newport Correctional Facility,"[1] and various

state and municipal officials, each in their personal and official capacities.  (Doc. 6 at 1–

6.)  Plaintiffs' claims stem from Defendants' seizure or arrest of Plaintiffs, the

proceedings in David Gauthier's state court criminal case, and Plaintiffs' treatment at

---

[1]  The Complaint names the "Newport Correctional Facility" as a defendant, but there does not appear to be an entity existing under that name.  Because the only correctional facility located in Newport, Vermont is the Northeast State Correctional Facility ("NSCF") (Doc. 49 at 1 n.1), the Court assumes NSCF is the party Plaintiffs intended to sue.  NSCF has waived service of the Complaint.  (Doc. 9.)

correctional facilities during the state court proceedings.  Plaintiffs seek $6.825 million in compensatory damages and $850,000 in punitive damages against all Defendants jointly and severally, as well as costs and attorney's fees.  (*Id.* at 12.)

All of the municipal Defendants have moved to dismiss.  Defendants Kirkpatrick and Ross have filed a Rule 12(b)(6) Motion for Partial Dismissal of Plaintiffs' claims against them, arguing that they cannot be sued in their official capacities.  (Doc. 34 at 1.) These Defendants also seek dismissal of Plaintiffs' claims against them under 42 U.S.C. §§ 1985, 1986, and 1988, and under the Fifth, Eighth, and Fourteenth Amendments.  (*Id.*) The City of Barre has filed a separate Rule 12(b)(6) Motion to Dismiss, arguing that Plaintiffs have failed to state a claim for § 1983 municipal liability.  (Doc. 35 at 3.)

Defendants NSCF and all of the other state officials have also moved to dismiss. Judge Howard VanBenthuysen seeks dismissal of the claims against him, asserting Eleventh Amendment immunity, absolute judicial immunity, and failure to state a claim. (*See* Doc. 50-1 at 1–2.)  Finally, the other state entities and officials—all of whom are represented by the Office of the Attorney General—have moved to dismiss Plaintiffs' claims against them, arguing Eleventh Amendment immunity, lack of personal involvement or failure to state a claim, absolute prosecutorial immunity, qualified immunity, and failure to state a claim of conspiracy under 42 U.S.C. §§ 1985 and 1986. (*See* Doc. 49 at 1–2.)

The Court held a hearing on the pending Motions on November 13, 2013, at which both David and Edward Gauthier appeared.  All parties have consented to direct

2

assignment to the undersigned Magistrate Judge.  (Docs. 33, 37, 38, 41, 53, 55.)  For the reasons discussed below, the Court GRANTS each of Defendants' Motions to Dismiss.

## Background

For purposes of the Motions to Dismiss, all facts alleged in the Complaint (Doc. 6) are accepted as true.[2]  On or about January 4, 2012 at approximately 7:15 p.m., Barre police officers Troy Kirkpatrick and Weiland Ross knocked on the door of Edward Gauthier's apartment and then entered the apartment without cause or a warrant, without identifying themselves as policemen, and without Edward Gauthier's consent.  Both Kirkpatrick and Ross were acting as "State employed" police officers for the City of Barre.  (Doc. 6 at 5, ¶¶ 3, 6.)  At no time, however, did Ross have a valid oath of office.

Kirkpatrick and Ross then "interrogated" Edward, asking him if David—who is Edward's brother—was there at Edward's apartment.[3]  (*Id.* at 6, ¶ 3.)  David was in the bathroom and did not hear Kirkpatrick and Ross enter the apartment.  David came out of the bathroom and observed Kirkpatrick and Ross standing in the kitchen.

Kirkpatrick said that he had a complaint and paperwork for David.  David observed the paperwork and told Kirkpatrick that he had received the same paperwork the day before from the Sheriff's office.  Kirkpatrick then took David's paperwork from the Sheriff's office and put it in his back pocket.  David asked Kirkpatrick to give him his paperwork back and Kirkpatrick said that he did not have it.  David pointed out that

---

[2]  The allegations against Defendant Tiffany Stark are not summarized here because there is no pending motion relating to them.

[3]  For clarity the Court refers to Plaintiffs by their first names.

Kirkpatrick had it in his back pocket.  Kirkpatrick then said, "[O]h I thought it was my paperwork," and returned it to David.  (*Id.* at 7, ¶ 11.)

Kirkpatrick instructed Ross to go out to the car and get a citation book.  Ross left the apartment and—over David's objection—re-entered with a citation book.  Kirkpatrick then instructed Ross to write and issue to David a citation to appear in court because David would not accept their paperwork.  David objected and refused the citation.

At that instant, Kirkpatrick and Ross grabbed Edward, slammed him on the counter, and handcuffed him.  Ross reached out to grab David's telephone because David was recording the event.  Ross then threw David on the floor and put his knee on David's back.  Kirkpatrick pointed a taser at David's face and threatened to shoot.  David was then handcuffed.

David objected, citing his constitutional rights.  Ross slammed David onto the floor, saying, "[F]uck your constitutional rights you don't have any constitutional rights." (*Id.* at 8, ¶ 18.)  As he was being taken to a police car, David observed two Vermont State Troopers arriving at the scene—Defendants Leblanc and Maurice—and he told Trooper Leblanc that his constitutional rights were being violated.  Trooper Leblanc responded, "[Y]ou'll have to take that up with the Judge."  (*Id.* at 8, ¶ 19.)  While being seized, David asked Ross to lock the door to Edward's apartment.  Ross would not lock the door, and as a result some of Edward's personal property was later stolen from the apartment.

David asked Ross to be taken before a judge immediately, but Ross told him he would have to wait in jail overnight because there was no judge available that late at night.  David was taken to the Barre police department, and Ross put him in a cell.  David

spent the night in jail, and was taken before Judge Howard VanBenthuysen the next morning.

Although it is not entirely clear from the Complaint, it appears that Judge VanBenthuysen ordered David jailed pre-trial.  The Judge told David he was going to jail, and gave no time limit.  The Complaint alleges that the charges in the criminal case have since been dismissed, but that David spent three months and a day in jail (presumably as a pre-trial detainee).  Plaintiffs allege a variety of errors with the criminal proceedings, including denial of counsel and denial of a speedy trial, some of which Plaintiffs seem to attribute to Deputy State's Attorney Megan Campbell as the "Prosecuting Attorney."  (*Id.* at 3.)  State's Attorney Thomas Kelly was not present during David's court appearance.

The Complaint also alleges that David spent four days in jail in St. Johnsbury, and that while he was there the jailors told him that if he did not sign certain paperwork he would not be given any food.[4]  David asserts that he signed the paperwork under duress for fear of starvation.  David was then transferred to the Northeast State Correctional Facility ("NSCF") in Newport, where he spent 88 days.  While at NSCF, for three weeks, David was denied medication that was prescribed by the Washington County Mental Health Facility.  He also suffered starvation because he is allergic to fish but was denied a special diet.  The Complaint is in some instances unclear about what happened to which

---

[4]  Since Plaintiffs served Defendants Fortier, Mathieu, Poginy, and Wade at the Northeast Regional Correctional Facility in St. Johnsbury, Plaintiffs appear to be alleging that they were the individuals who told David he would not be given any food if he did not sign the paperwork.  (*See* Doc. 6 at 2.)

Plaintiff, but at the November 13, 2013 hearing, Edward stated that he, too, was incarcerated and denied medication.

Plaintiffs have also included Bonnie Goode, the administrator of the Vermont Sex Offender Registry, as a Defendant in this case.  According to Plaintiffs, Goode was presented with papers from the Maine Sex Offender Registry instructing her to remove David from the Vermont Sex Offender Registry, apparently because David had completed his requirement to remain on the Maine Registry for ten years.  Goode, however, decided not to remove David from the Vermont Registry.

## **Analysis**

### I.    **Standard of Review**

At the outset, the Court notes that some of the named Defendants seek dismissal not only under Rule 12(b)(6), but also under Rule 12(b)(1) on immunity grounds.  As the Second Circuit has noted, the distinction is potentially significant because in evaluating a Rule 12(b)(1) motion, a court may resolve disputed factual issues by reference to evidence outside the pleadings.  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).  Here, however, the Defendants seeking dismissal under Rule 12(b)(1) have not presented affidavits or evidence that they contend should be considered in resolving any factual issue.  The Court therefore constrains its review to the documents permissible under Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir.

2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although the Court must

"accept as true all factual statements alleged in the complaint and draw all reasonable

inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482

F.3d 184, 191 (2d Cir. 2007), a plaintiff's "[f]actual allegations must be enough to raise a

right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to [defeat] a motion to dismiss."  *Achtman v. Kirby,*

*McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original)

(quotation marks omitted).

 Where, as here, the plaintiffs are proceeding *pro se*, courts are obligated to

construe the pleadings liberally.  *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d

185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Nevertheless, a *pro se* plaintiff's complaint must state a claim to relief that is plausible on

its face.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

 Plaintiffs have filed no written opposition to the Motions to Dismiss, but their

failure to respond in writing does not warrant dismissal; the Court is still required to

review the Motions and determine whether the Complaint is sufficient to state a claim on

which relief can be granted.  *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

## II.     Kirkpatrick and Ross's Motion for Partial Dismissal

 Defendants Kirkpatrick and Ross move to dismiss all of Plaintiffs' claims against

them in their official capacities, and further move to dismiss Plaintiffs' claims under 42

U.S.C. §§ 1985, 1986, and 1988. They also seek dismissal of Plaintiffs' claims under the Fifth, Eighth, and Fourteenth Amendments.

### A.    Official-Capacity Claims

Kirkpatrick and Ross argue that Plaintiffs' claims against them in their official capacities must be dismissed as redundant to Plaintiffs' claims against the City of Barre. (Doc. 34 at 5.) The Court agrees. "A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Here, Plaintiffs have also named as a defendant the City of Barre—the principal for whom Kirkpatrick and Ross were working as agents. Plaintiffs' claims against Kirkpatrick and Ross in their official capacities are therefore duplicative of the action against the City. *See Nolen v. City of Barre, Vt.*, No. 2:10-CV-241, 2011 WL 805865, at *5 (D. Vt. Mar. 1, 2011) (dismissing claims against individual Barre City officials in their official capacities as duplicative of the action against the City). Plaintiffs' claims against the City of Barre are discussed in Part III, *infra*.

### B.    Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986

The three subsections of 42 U.S.C. § 1985 proscribe conspiratorial activity that interferes with the following five categories of activities: "(a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the

administration of justice in state courts; (d) the private enjoyment of 'equal protection of

the laws' and 'equal privileges and immunities under the laws'; and (e) the right to

support candidates in federal elections." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).

The civil remedy for a violation of any of the three subsections of § 1985 is found at the

end of § 1985(3).  *Id.*  Kirkpatrick and Ross maintain that § 1985(1) and (2) do not apply

to the facts alleged in the Complaint, and that Plaintiffs fail to allege an essential element

to a claim under § 1985(3)—namely, class-based invidious discriminatory animus.  (Doc.

34 at 6–8.)

Section 1985(1) proscribes conspiracies that interfere with the performance of

official duties by federal officers.  *See Kush*, 460 U.S. at 724.  The Complaint in this case

contains no allegations that Kirkpatrick and Ross engaged in such a conspiracy.  Section

1985(2) prohibits conspiracies that interfere with the administration of justice in state and

federal courts.  *See id.*  Here, the Complaint alludes to a court proceeding in that

Kirkpatrick and Ross were attempting to deliver a complaint and paperwork to David.

However, the alleged facts do not suggest that Kirkpatrick and Ross were acting to

obstruct that proceeding or any other court proceeding by, for example, intimidating a

party, witness, or juror.  To the extent that David was a party to the proceedings

described in the paperwork, the Complaint does not allege or suggest that the force used

or other actions taken by Kirkpatrick and Ross did deter or were designed to deter David

from attending court or testifying, or to retaliate for having testified.

Section 1985(3) proscribes conspiracies that interfere with the right to support

candidates in federal elections, and that interfere with the private enjoyment of "equal

9

protection of the laws" and "equal privileges and immunities under the laws." *Id.* at 724. Here, the Complaint does not suggest any attempt to interfere with Plaintiffs' right to support candidates in federal elections. However, the Complaint does allege violations of the Fourteenth Amendment, which prohibits state action that abridges citizens' privileges and immunities or denies the equal protection of the laws. Thus Plaintiffs are presumably alleging a conspiracy under § 1985(3)'s "deprivation" clause, its "hindrance" clause, or both. *See Jenkins v. Miller*, No. 2:12-CV-184, 2013 WL 5770387, at *22 (D. Vt. Oct. 24, 2013) (distinguishing those two clauses of § 1985(3)).

In order to state a claim under either the deprivation clause or the hindrance clause, a plaintiff must allege that the conspiracy was motivated by invidiously discriminatory intent. *See id.* at *23, *29 (citing *Libertad v. Welch*, 53 F.3d 428, 448 (1st Cir. 1995)). The Complaint in this case lacks any allegations of class-based discrimination underlying Kirkpatrick and Ross's actions, and thus fails to state a claim under § 1985(3). *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999); *Lucas v. New York City*, 842 F. Supp. 101, 104 (S.D.N.Y. 1994) (dismissing complaint for failure to state a claim under § 1985(3) because it was "devoid of any allegation of a 'class-based, invidious discriminatory animus'") (quoting *Tuaha Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)); *see also Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010) (same; citing *Lucas*).

In sum, Plaintiffs have failed to state a claim under any of the provisions of § 1985. As a result, Plaintiffs' claim under 42 U.S.C. § 1986 must also fail. *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be

predicated on a valid § 1985 claim.") (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam)); *Posr*, 180 F.3d at 419 ("[N]o § 1986 claim will lie where there is no valid § 1985 claim.") (citing *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994)).  And the Court need not consider Kirkpatrick and Ross's alternative argument that Plaintiffs' claim under § 1986 is time-barred under that statute's one-year limitations period.  (*See* Doc. 34 at 8.)

   **C.**     **Section 1983 Claims**

   Federal law provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right."  *Id.*

Here, Plaintiffs claim that Kirkpatrick and Ross were acting under color of state law when they deprived Plaintiffs of their rights under the Fourth, Fifth, Eighth,[5] and Fourteenth Amendments.  (Doc. 6 at 4.)  Kirkpatrick and Ross move to dismiss each of these claims except the Fourth Amendment claim.  (Doc. 34 at 1.)

### 1.      Fifth Amendment Claim

Plaintiffs cite the Fifth Amendment in their Complaint, but it is not clear which provision of that Amendment they allege was violated.  Kirkpatrick and Ross assume the claim is that they violated Plaintiffs' rights against self-incrimination.  (Doc. 34 at 9.) They assert that the Complaint's allegation that they "interrogated" Edward about David's whereabouts is "the closest the Plaintiffs get to making a Fifth Amendment claim."  (*Id.* at 9 n.7.)  Kirkpatrick and Ross maintain that the Complaint does not allege that any unwarned self-incriminating assertion by either Plaintiff was introduced at any trial against them, and that as a result Plaintiffs have failed to state a Fifth Amendment claim.  (*Id.* at 9–10.)

The Fifth Amendment protects the right against self-incrimination.  *See United States v. Chiochvili*, 81 F. Supp. 2d 393, 394–95 (N.D.N.Y. 1999) ("Pursuant to the Fifth Amendment privilege against self-incrimination it is well established and well known that a person taken into custody by law enforcement officials must be advised of her rights, including, among others, the right to remain silent.") (footnote omitted) (citing *Miranda v. Arizona*, 384 U.S. 436, 467–68 (1966)).  To the extent that Plaintiffs are

---

[5] Plaintiffs unambiguously cite the Eighth Amendment in their Complaint (Doc. 6 at 4), but there is some question about whether they are asserting any Eighth Amendment claim against Defendants Kirkpatrick, Ross, and the City of Barre.  That issue is discussed in Part II.D.2 below.

alleging a violation of the Fifth Amendment privilege against self-incrimination, the Court finds that the Complaint fails to state a claim for damages under § 1983 for any such violation.  The Complaint does not allege that any unwarned statements made by Plaintiffs were used against them at trial, but even if it did, the remedy would not be damages under § 1983.  *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("The remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'") (quoting *Neighbor v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam)).[6]

In addition to the right against self-incrimination, the Fifth Amendment guarantees four additional categories of rights: (1) the right to grand juries in most criminal cases; (2) a prohibition on double jeopardy; (3) a due process and equal protection guarantee;[7] and (4) a "just compensation" clause for federal government takings of private property. *See* U.S. Const. amend. V.  Of those, the only potentially relevant category in this case is the due process and equal protection guarantee.[8]  However, the analysis of due process and equal protection under the Fifth Amendment is "basically the same" as the analysis

---

[6]  As the court in *Neighbour* explained, this is because "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment."  68 F.3d at 1510.

[7]  The Fifth Amendment does not explicitly guarantee equal treatment under the law, but "the liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."  *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013); *see also Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998) ("The Due Process Clause of the Fifth Amendment assures every person the equal protection of the laws, 'which is essentially a direction that all persons similarly situated should be treated alike.'") (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

[8]  To the extent that Plaintiffs might be asserting that Kirkpatrick and Ross's failure to lock the apartment door constituted a "taking," that claim would be meritless because the Complaint alleges that the personal property was stolen, not taken by the government for "public use."  U.S. Const. amend. V.

under the Fourteenth Amendment.  *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998);

*see Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997) ("The standards for analyzing

equal protection claims under either amendment [i.e., the Fifth or the Fourteenth] are

identical.").  Given that Plaintiffs also allege violations of the Fourteenth Amendment,

the Court treats all of the allegations of due process and equal-protection violations

together, *infra*, in the course of analyzing Plaintiffs' Fourteenth Amendment claim.

### 2.    Eighth Amendment Claim

The Complaint alleges that David has suffered:

> [P]hysical and emotional cruel and unusual punishment, in direct violation
> of the Eighth Amendment, by [the] combined unreasonable actions of
> Defendants John Does as shown above and it is unreasonable that any jailor
> would not have known that to physically torture a prisoner by not allowing
> him to have allocations of sufficient food, or receive medical treatment,
> would be a violation of his rights.

(Doc. 6 at 11.)  Parsing that allegation, Kirkpatrick and Ross note that Plaintiffs appear to

limit their Eighth Amendment claims to "Defendants John Does," but contend that, even

if the claims are also directed at them, they fail.  (Doc. 34 at 10 & n.8.)  The Court agrees

that the above-quoted paragraph does not allege any Eighth Amendment claim against

Kirkpatrick or Ross.  However, the Complaint asserts elsewhere that, "[a]t all time[s]

relevant, all defendants, especially Kirkpatrick, Ross, and Judge VanBenthuysen, were

acting within the scope of their duties . . . when depriving Gauthier of his rights . . .

protected by the 4th, 5th, 8th, and 14th amendments."  (Doc. 6 at 10–11.)

To the extent that Plaintiffs are attempting to allege an Eighth or Fourteenth Amendment[9] violation against Kirkpatrick and Ross, the Complaint contains only a conclusory allegation that Kirkpatrick and Ross violated the constitutional provisions regarding conditions of confinement.  Plaintiffs have alleged no facts suggesting that either Kirkpatrick or Ross was involved in any of the alleged unconstitutional conditions of confinement.  Kirkpatrick or Ross did, according to the Complaint, place David in jail for one night before he appeared in court, but Plaintiffs' only attack on that act is directed at the fact—not the conditions—of the confinement.  Even when viewed in the light most favorable to Plaintiffs, the Complaint does not suggest that Kirkpatrick or Ross was involved in the allegedly unconstitutional conditions at either of the correctional facilities where David was incarcerated after he appeared before Judge VanBenthuysen.  Therefore, the Court need not consider Kirkpatrick and Ross's additional argument that, even if they were responsible for withholding medication or food, those acts or omissions do not rise to the level of a serious medical condition.  (*See* Doc. 34 at 11.)[10]

### 3.    Fourteenth Amendment Claim

Kirkpatrick and Ross note that the precise nature of Plaintiffs' Fourteenth Amendment claim is not clear from the Complaint.  (Doc. 34 at 12.)  However,

---

[9]  Because the only confinement alleged in the Complaint appears to have occurred pretrial, the claim would properly be analyzed under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody.").  That is a distinction without much difference, however, given that the analysis is the same under either Amendment.  *See id.* at 70–71.

[10]  The Court will address the issue, however, in the context of the Attorney General's motion to dismiss the claims against the John Does.  *See infra*, Part V.C.4.

Kirkpatrick and Ross identify three potential Fourteenth Amendment claims that Plaintiffs might be attempting to assert against them: (1) a procedural due-process claim arising out of the personal property stolen from Edward's apartment; (2) a substantive due-process claim arising out of Kirkpatrick and Ross's entry into the apartment and the arrests they effected; and (3) an equal-protection claim premised on the same entry and arrests.  (*Id.* at 12–16.)  Kirkpatrick and Ross maintain that the procedural due-process claim fails for lack of state action; that the substantive due-process claim fails because it is trumped by Plaintiffs' Fourth Amendment claim; and that any equal-protection claim fails because the Complaint does not allege that Kirkpatrick or Ross treated Plaintiffs differently from others similarly situated, that their actions were racially motivated, or that they were treated differently without a rational basis for such treatment.  (*Id.*)

The Court agrees that Plaintiffs have failed to state a procedural due-process claim based on a third party's theft of personal property from Edward's unlocked apartment. As the Supreme Court has stated, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Even an intentional deprivation of property by a state employee "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post[-]deprivation remedy." *Id.* (footnote omitted).  Here, Kirkpatrick

or Ross's failure to lock the apartment door may have been a negligent act or omission

causing a subsequent theft, but that act or omission does not constitute a due-process

violation.  Moreover, whether the failure to lock the apartment was negligence or an

intentional act, the State of Vermont provides a suitable post-deprivation remedy in the

form of an action for negligence or conversion.

The Court also agrees that Plaintiffs' claims arising out of Kirkpatrick and Ross's

entry into Edward's apartment and arrest of both Plaintiffs should not be analyzed as

substantive due-process claims under the Fourteenth Amendment.  Insofar as Plaintiffs

challenge Kirkpatrick and Ross's entry into Edward's apartment as an unreasonable

search, that claim should be analyzed under the Fourth Amendment, not the Fourteenth.

*Conn v. Gabbert*, 526 U.S. 286, 293 (1999).  Similarly, Plaintiffs' claim that Kirkpatrick

and Ross used excessive force in effecting the arrests must be analyzed under the Fourth

Amendment rather than under a "substantive due process" approach.  *Graham v. Connor*,

490 U.S. 386, 395 (1989).  This is because "the Fourth Amendment provides an explicit

textual source of constitutional protection" against unreasonable searches and seizures,

and thus that Amendment should be the guide for analyzing such claims, as opposed to

the "more generalized notion of 'substantive due process.'"  *Id.*

Finally, the Court concludes that Plaintiffs have failed to state a claim against

Kirkpatrick and Ross under the Fourteenth Amendment's Equal Protection Clause.  "The

Equal Protection Clause requires that the government treat all similarly situated people

alike."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "Under the Equal

Protection Clause, certain 'suspect' classifications are subject to strict judicial scrutiny." *Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009) (per curiam). "Quasi-suspect" classifications receive "intermediate scrutiny." *Windsor v. United States*, 699 F.3d 169, 185 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013). "When a party challenges a government classification that does not involve a suspect class or burden fundamental rights, courts apply rational basis scrutiny." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 136 (2d Cir. 2013). "Individuals who allege no specific class membership but are nonetheless subject to invidious discrimination at the hands of government officials" may bring a "class of one" equal protection claim. *Harlen*, 273 F.3d at 499 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

Here, Plaintiffs allege that Kirkpatrick and Ross failed to apply the law correctly and violated Plaintiffs' fundamental rights, but that is different from a claim that they failed to apply the law equally on the basis of some classification. Even construed liberally, the Complaint does not allege or suggest that any "discriminatory intent" was a motivating factor in Kirkpatrick and Ross's actions. *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009).

## III.   The City of Barre's Motion to Dismiss

As noted above, Plaintiffs contend that the City of Barre maintains a practice of depriving individuals of their liberty and property rights, neglected to properly train or supervise its police officers and "municipal judges," and is vicariously liable for the actions of its employees. (Doc. 6 at 10–11.) The City of Barre moves to dismiss each of Plaintiffs' claims against it.

## A.    The City's Liability for Judge VanBenthuysen's Acts

Plaintiffs have failed to state a facially plausible claim under which the City of Barre might be liable for failing to properly train or supervise Judge VanBenthuysen, or vicariously for his allegedly wrongful judicial acts.  Judge VanBenthuysen is not a municipal judge, and the City of Barre has no supervisory authority over him.  It is a matter of public record[11] that Judge VanBenthuysen is—and was in January 2012—a Superior Judge for the State of Vermont.  *See* 4 V.S.A. § 1 (establishing unified state court system); Assignment and Designation No. 11-2011 (Vt. Super. Ct. May 2011) (Davenport, J.), *available at* https://www.vermontjudiciary.org/JC /Shared%20Documents/2011-2012Assignments.pdf (listing Judge VanBenthuysen as a Superior Judge for the Vermont Superior Courts).[12]  The City of Barre cannot be liable directly for failing to train or supervise a Vermont Superior Judge, nor can it be liable vicariously for the Judge's allegedly wrongful judicial acts.[13]

## B.    Other Claims against the City of Barre

Plaintiffs' claim that the City is vicariously liable for the allegedly wrongful acts of Officers Kirkpatrick and Ross fails because *respondeat superior* is not a basis for rendering a local government liable for constitutional violations committed by its employees.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)

---

[11]   The Court may rely on matters of public record in deciding a Rule 12(b)(6) motion.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

[12]   As Judge VanBenthuysen notes, Vermont abolished municipal courts in 1965.  (*See* Doc. 50-1 at 7.)

[13]   Plaintiffs' claims against Judge VanBenthuysen himself in his official and personal capacities are discussed in Part IV, *infra*.

("[A] municipality cannot be held liable under §1983 on a *respondeat superior* theory."). However, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690–91). Plaintiffs have in fact asserted that the City of Barre maintains a practice of depriving individuals of their liberty and property rights. (Doc. 6 at 10.) But they have included no facts to support that allegation. Plaintiffs have not alleged that the City of Barre has formally adopted an unconstitutional policy that caused them harm, nor have they asserted other instances of allegedly unconstitutional conduct that would suggest a pattern or practice. Plaintiffs' conclusory allegation of a practice of constitutional deprivations is insufficient to defeat a motion to dismiss.

Plaintiffs also allege that the City of Barre is directly liable for failing to properly train and supervise Kirkpatrick and Ross. Municipal liability may be "premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)); *see also Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (citing *City of Canton,* 489 U.S. at 389) (municipality's alleged failure to train and supervise is a permissible theory under § 1983). To prove deliberate indifference, Plaintiffs must show:

> (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the

situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.

*Okin*, 577 F.3d at 440 (internal quotation omitted).  "[A] plaintiff pleading failure to train must provide more than a 'simple recitation' of the theory of municipal liability." *Kucera v. Tkac*, No. 5:12-CV-264, 2013 WL 1414441, at *9 (D. Vt. Apr. 8, 2013).[14]

Here, Plaintiffs have supplied only a bare assertion that the City of Barre failed to train or supervise Officers Kirkpatrick and Ross.  They have alleged no facts on any of the elements of deliberate indifference.  The Complaint's simple recitation of a failure-to-train theory is insufficient and cannot survive Defendants' motion to dismiss.

## IV.    Judge VanBenthuysen's Motion to Dismiss

Judge Howard VanBenthuysen seeks dismissal of the claims against him, asserting Eleventh Amendment immunity, absolute judicial immunity, and failure to state a claim. (*See* Doc. 50-1 at 1–2.)  The Court addresses these arguments below, beginning with the claims against Judge VanBenthuysen in his official capacity.

### A.    Official-Capacity Claims

Plaintiffs' claims against Judge VanBenthuysen in his official capacity are barred by the Eleventh Amendment.  The Eleventh Amendment bars suits in federal court for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity.  *See*

---

[14]  In *Amnesty America v. Town of West Hartford*, the Second Circuit stated: "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."  361 F.3d 113, 130 n.10 (2d Cir. 2004).  As this Court explained in *Kucera*, however, *Amnesty* was decided prior to *Iqbal* and *Twombly*, which require more than a simple recitation of a failure-to-train theory of municipal liability.

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.") (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its immunity under the Eleventh Amendment.  *See, e.g.*, 12 V.S.A. § 5601(g).  Moreover, the United States Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).

Here, Judge VanBenthuysen's allegedly wrongful acts were done in his official capacity.  Indeed, the Complaint explicitly states that Judge VanBenthuysen was "acting as a duly elected official and was . . . performing his duties as a magistrate."  (Doc. 6 at 5.)  Accordingly, Judge VanBenthuysen's Motion to Dismiss Plaintiffs' claims for damages against him in his official capacity under § 1983 is GRANTED.  The Court also GRANTS Judge VanBenthuysen's Motion to Dismiss Plaintiffs' claims for damages against him in his official capacity under §§ 1985 and 1986.  *See Browdy v. Karpe*, 131 F. App'x 752–53 (2d Cir. 2005) ("To the extent [plaintiff] sues defendants in their 'official capacity' as employees of the Connecticut Public Defender Services, a state

agency, his §§ 1983, 1985, and 1986 claims for money damages are barred by the Eleventh Amendment.") (citation omitted).

###    B.    Personal-Capacity Claims

Plaintiffs' claims against Judge VanBenthuysen in his personal capacity also fail. These claims are not sufficiently stated to survive a motion to dismiss, and are barred by the doctrine of absolute judicial immunity.  "Judges are, of course, immune from liability for damages under many circumstances." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005).  Judges enjoy this immunity because, if they were threatened with personal liability for their judicial actions, it could prevent them from "exercis[ing] their functions with independence and without fear of consequences." *Id.* (internal quotation marks omitted).  The general rule is that, "if the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction." *Id.* at 75. Acts done in excess of jurisdiction are not necessarily done in the "complete" absence of jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'") (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)).

Before considering Plaintiffs' specific allegations against Judge VanBenthuysen, it is necessary to review certain facts taken from the Vermont Superior Court, Washington

Criminal Division's docket sheet in an underlying matter involving David (Doc. 50-2).[15]

On January 5, 2012, David appeared before Judge VanBenthuysen and was arraigned on

four counts: violation of an abuse prevention order, violation of conditions of release,

resisting arrest, and impeding a public officer.  (Doc. 50-2 at 1.)  Judge VanBenthuysen

found probable cause on each of the four counts, and set bail in the amount of $7,500.

(*Id.*)  Following David's plea of not guilty, the court issued a mittimus for failure to give

bail, and committed David to custody.  (*Id.* at 2.)  Public Defender Maggie Vincent stood

in for the arraignment, and was assigned to David's case on January 9, 2012.  (*Id.*)  On

March 15, 2012,Vincent filed a motion for bail review, and on March 21, 2012, the court

reduced the bail amount to $5,000 with a $500 deposit.  (*Id.*)  Cash bail was posted, and

David Gauthier was released subject to conditions on March 22, 2012.  (*Id.*)  On

August 29, 2012, David waived his right to counsel.  (*Id.* at 3.)  On March 8, 2013, the

State dismissed the charge stemming from the alleged violation of an abuse-prevention

order.  (*Id.* at 4.)  As of August 14, 2013, the court proceedings on the remaining three

counts were ongoing.  (*See id.* at 5.)

The three specific allegations against Judge VanBenthuysen in the Complaint are

as follows: (1) "[Judge] VanBenthuysen communicated to [David] that [David] was

going to jail and gave no time limit"; (2) "[Judge] VanBenthuysen incarcerated [David]

---

[15]  The docket sheet is not part of Plaintiffs' Complaint, but it is a public record and the Court
may therefore take judicial notice of it and consider it in this procedural context.  *See Tellabs, Inc. Makor
Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as
well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
particular, documents incorporated into the complaint by reference, and matters of which a court may take
judicial notice."); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are
public records of which the court could take judicial notice . . . .") (citing *Pani v. Empire Blue Cross Blue
Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).

for three months and a day for charges that have been dismissed since [David's] initial arrest [on] Jan[uary] 4, 2012"; and (3) David "was denied [counsel], denied a complaint, denied a speedy trial and/or the ability to make a plea."  (Doc. 6 at 8–9.)  Plaintiffs' first allegation against Judge VanBenthuysen—that the Judge failed to give David a time limit on his jail time—is premised on an omission rather than an action.  Plaintiffs appear to assert that Judge VanBenthuysen should have placed a time limit on David's pretrial detention.  But Plaintiffs cite no authority to support this proposition, and the Supreme Court has refused to quantify the speedy trial right into "a specified number of days or months."  *Vermont v. Brillon*, 556 U.S. 81, 89–90 (2009).  Moreover, Judge VanBenthuysen is immune from personal liability based on this omission because his statements (or omissions) made to David during the arraignment are undoubtedly judicial in nature.  Moreover, the omissions were not made in the absence of jurisdiction.  Judge VanBenthuysen's refusal to set a time limit for David's pretrial detention did not violate David's constitutional rights; rather, it would have been inconsistent with the speedy-trial analysis for the Judge to attempt to state with certainty how long the detention might last.

Plaintiffs' second allegation against Judge VanBenthuysen is that his order to place David in jail was wrongful because at least one of the charges against David has been dismissed.  However, David's pre-trial detention was the result of his failure to post bail, and the Judge's decision to set bail is indisputably a judicial act that is well within the Superior Court's jurisdiction.  *See* 13 V.S.A. § 7554 (describing judge's authority to set conditions to assure the defendant's appearance and to protect the public).  Moreover, the judge's decision is based on the "available information" at the time.  *Id.* § 7554(b).

Here, Judge VanBenthuysen did not know in January 2012 that one of the four charges would be dismissed in March 2013, and even if he did, Plaintiffs have not shown why the Judge would have been without jurisdiction to enter the same order based on the three other charges.

Third, Plaintiffs contend that David "was denied [counsel], denied a complaint, denied a speedy trial and/or the ability to make a plea." (Doc. 6 at 8–9.)  Each of those alleged denials are judicial acts, and Plaintiffs' allegations do not hint that they were made in the absence of jurisdiction.  Determining whether to assign publicly funded counsel is a judicial act within the Superior Court's jurisdiction.  *See, e.g.*, 13 V.S.A. § 5236(a) (providing that "the court shall determine, with respect to each proceeding, whether the person is a needy person" entitled to public defender services).  Moreover, the docket sheet plainly establishes that, for all times during which Judge VanBenthuysen was presiding over David's case, David was in fact represented by a public defender.  To the extent that Plaintiffs are alleging that David received ineffective assistance of counsel, that cause of action is inappropriate in a proceeding brought under § 1983. *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004).

Plaintiffs' allegation that Judge VanBenthuysen denied "a complaint" is unclear.  But if Plaintiffs expected the Superior Court to act to remedy some alleged wrong, that remedial act could only have been of a judicial nature.  And there is nothing in the Complaint to suggest that Judge VanBenthuysen's denial of Plaintiffs' request was done in the absence of jurisdiction.  The Judge's acts or omissions that may have caused the alleged speedy-trial violation are also judicial acts, and are also within the Superior

26

Court's jurisdiction.  *See State v. Brillon*, 2008 VT 35, ¶ 4, 955 A.2d 1108, 1112, *rev'd on other grounds*, 556 U.S. 81 (2009) (trial courts have ultimate control over, and responsibility for, their own proceedings).  Finally, Judge VanBenthuysen is immune from Plaintiffs' claim that he denied David the ability to make a plea, as the docket sheet indisputably establishes that David entered a not guilty plea on January 5, 2012.  (Doc. 50-2 at 2.)  Even assuming David was unable to make a plea, hearing a defendant's plea is a judicial function and thus within the Superior Court's jurisdiction.

The Complaint also alleges that Judge VanBenthuysen's acts constitute a conspiracy and treason.  (Doc. 6 at 4.)  But the Second Circuit has held that "an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity."  *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987) ("absolute immunity spares the [government] official any scrutiny of his motives").  And because Judge VanBenthuysen had jurisdiction to resolve the underlying criminal case, he is entitled to absolute judicial immunity from Plaintiffs' claims that he committed treason based on his actions or inactions therein.  *See Sibley v. Breyer*, 456 F. Supp. 2d 43, 45 (D. D.C. 2006) (holding that because they had jurisdiction to resolve plaintiff's earlier action, the Justices of the United States Supreme Court and three judges of the Court of Appeals were entitled to absolute judicial immunity in an action alleging that they violated plaintiff's rights and committed treason by failing to recuse themselves in a prior case); *see also Gordon v. City of Hoisington, Kan.*, No. 07-3161-SAC, 2008 WL 347692, at *2 (D. Kan. Feb. 7, 2008) ("[P]laintiff's claims for damages against the state court judges are barred

by judicial and prosecutorial immunity notwithstanding plaintiff's allegation of treason by the state court judge").  Accordingly, Plaintiffs' claims against Judge VanBenthuysen for conspiracy and treason do not overcome the Judge's absolute immunity.

Even if Judge Van Benthuysen were not immune, Plaintiffs have offered no more than conclusory allegations of conspiracy and treason.  Moreover, treason is a crime, *see* U.S. Const. art. III, § 3; 18 U.S.C. § 2381, and Plaintiffs cannot prosecute an alleged crime by private complaint, *see Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdictions by private complaints.").

Finally, Plaintiffs have failed to state a claim against Judge VanBenthuysen under 42 U.S.C. § 1985, for the same reasons stated above regarding Plaintiffs' similar claim against Officers Kirkpatrick and Ross, *supra* Part II.B.  Subsections (1) and (2) of § 1985 do not apply here, and Plaintiffs have not alleged any racial or class-based discriminatory animus, as required to state a claim under subsection (3).  As also stated above, because Plaintiffs have not stated a § 1985 claim, their § 1986 claim must also fail.  *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim.") (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam)).

28

**V.     The State Defendants' Motion to Dismiss**

All of the remaining Defendants[16] except Defendant Tiffany Stark (the "State

Defendants") move to dismiss Plaintiffs' claims against them on the grounds of Eleventh

Amendment immunity, lack of personal involvement or failure to state a claim, absolute

prosecutorial immunity, qualified immunity, and failure to state a claim of conspiracy

under 42 U.S.C. §§ 1985 and 1986.  (*See* Doc. 49 at 1–2.)

**A.     Damages Claims against NSCF**

Plaintiffs' §§ 1983, 1985, and 1986 claims against NSCF must be dismissed on

Eleventh Amendment immunity grounds and for failure to state a claim.  NSCF is an arm

of the State of Vermont, and claims for damages against it are barred by the Eleventh

Amendment.  *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (claims for

damages against the Attica Correctional Facility were barred by the Eleventh

Amendment).  In addition, NSCF is not a "person" within the meaning of §§ 1983, 1985

and 1986.  *See Allison v. Calif. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (state

prison was not a "person" for purposes of the Civil Rights Act, including § 1985); *Sweet*

*v. N. Neck Regional Jail*, 857 F. Supp. 2d 595, 597 (E.D. Va. 2012) (dismissing

plaintiff's § 1983 claim against a regional jail because the jail is not a "person" within the

meaning of the statute); *Powell v. Cook Cnty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993)

(county jail was not a "person" under § 1983).

---

[16]   The remaining Defendants are: Thomas Kelly, Megan Campbell, Bonnie Goode, Raymond
Leblanc, Crista Maurice, Rick Wade, Michael Mathieu, Nicholas Fortier, Jeff Poginy, NSCF, and Tiffany
Stark.

## B.     Official-Capacity Claims

For the same reason that Plaintiffs' damages claims against Judge VanBenthuysen in his official capacity must be dismissed, *supra* Part IV.A, Plaintiffs' damages claims against the individual State Defendants in their official capacities must also be dismissed.[17]   As noted above, the Eleventh Amendment bars suits in federal court for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity.  The State of Vermont has not consented to suit, nor is there any express or statutory waiver of immunity.  Since the individual State Defendants are state officials, and their allegedly wrongful acts were done in their official capacities, Plaintiffs' damages claims against them in their official capacities under §§ 1983, 1985, and 1986 are all barred under the Eleventh Amendment.

## C.     Personal-Capacity Claims

Before addressing the individual State Defendants' argument against liability under § 1983, the Court disposes of Plaintiffs' claims against all of the State Defendants under §§ 1985 and 1986.  The analysis is the same with respect to the individual State Defendants as it was for Officers Kirkpatrick and Ross, *supra* Part II.B, and for Judge VanBenthuysen, *supra* Part IV.B.  Subsections (1) and (2) do not apply, and Plaintiffs have not alleged any racial or class-based discriminatory animus that would be necessary

---

[17]   It appears that the "Defendants John Does" named in the Complaint are also state employees or agents, as they are described as "any jailer."  (Doc. 6 at 11.)  The personal-capacity claims against these "John Doe" Defendants are discussed in Part V.C.4, below.

to state a claim under subsection (3).  Since Plaintiffs have not stated a § 1985 claim, their § 1986 claim must also fail.

### 1.    State's Attorney Kelly and Deputy State's Attorney Campbell

Defendants Kelly and Campbell assert that dismissal of the claims against them is proper because the Complaint does not make any specific allegation against either of them, and because they are both entitled to absolute prosecutorial immunity.  For the reasons discussed below, the Court agrees.

The Complaint names Campbell and Kelly as Defendants, but fails to make any specific allegations of wrongful conduct against either of them.  *See Davidson v. Mann*, 129 F.3d 700, 701 (2d Cir. 1997) ("[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights.").  The only specific allegation against Defendant Kelly is that he was not present in the courtroom during David's appearance.  (Doc. 6 at 9.)  A state's attorney's failure to attend a defendant's appearance at a criminal proceeding does not amount to wrongful or improper conduct, as Vermont law does not require an elected state's attorney to be present for every criminal proceeding.

Reading the Complaint liberally, Plaintiffs allege that Campbell was the prosecuting attorney in the criminal proceedings commencing against David in January 2012, and made constitutional errors in those proceedings: David was allegedly "denied [counsel], denied a complaint, [and] denied a speedy trial and/or the ability to make a plea."  (Doc. 6 at 8–9.)  To the extent Plaintiffs are arguing that the prosecution did not offer David a plea bargain, there is no constitutional violation, as the government is not

31

required to offer any defendant a plea agreement.  *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  The Complaint does not otherwise specify how Defendants Campbell or Kelly might have contributed to the alleged violations.  Moreover, all of Plaintiffs' allegations against Defendants Campbell and Kelly appear to be related to their involvement as advocates in the criminal judicial process against David, and the law clearly provides that they are absolutely immune from these claims.  *See Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) ("A prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts 'intimately associated with the judicial phase of the criminal process.'") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

### 2.    Troopers Leblanc and Maurice

Defendants Troopers Leblanc and Maurice argue that Plaintiffs' claims against them must be dismissed because the Complaint contains no allegation of wrongdoing by either of them, and because they are entitled to qualified immunity.  The Court agrees.  It appears from the Complaint that the Troopers' role in this case was limited to being present while Officers Kirkpatrick and Ross were leading David to a police car, and failing to take action as David protested that his constitutional rights were being violated.

It is true that a police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)).  "Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability."  *Id.*  "To recover on that ground, of course, a

plaintiff must still overcome the hurdle of qualified immunity." *Id.* "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate these rights." *Id.*

Here, there is no allegation in the Complaint that the Troopers had any information about the circumstances of David's arrest. According to the Complaint, the Troopers were arriving on the scene as David was being led to a police car. The alleged constitutional violations all occurred prior to that time and outside the Troopers' presence. The Troopers observed David being led to a police car and heard his protestation that his rights were being violated. It was not objectively unreasonable for the Troopers to believe that Kirkpatrick and Ross's conduct did not violate David's rights. Thus, the Troopers are entitled to qualified immunity, and Plaintiffs have failed to state a claim against Troopers Leblanc and Maurice.

### 3.     St. Johnsbury Employees Wade, Mathieu, Fortier, and Poginy

Defendants Fortier, Mathieu, Poginy, and Wade (the "St. Johnsbury Employees") are apparently corrections officers or employees at the Northeast Regional Correctional Facility in St. Johnsbury. Reading the Complaint in the light most favorable to Plaintiffs, Plaintiffs allege that the St. Johnsbury Employees told David that he could not be given anything to eat if he did not sign certain paperwork. Plaintiffs have failed to offer

sufficient factual allegations to raise a right to relief.  Coercing an inmate into signing

documents does not amount to cruel and unusual punishment.  *Davis v. Commonwealth*,

No. 06-4952, 2007 WL 788828, at *4 (E.D. Pa. Mar. 12, 2007).  This type of coercion is

more properly analyzed under the Due Process Clause.  *See id.*  But even accepting as

true the allegation that David was coerced into signing a document, it does not follow that

his due-process rights were violated.  *See Harris v. Doherty*, No. 97-30095, 1997 WL

574819, at *1 (5th Cir. Aug. 18, 1997) (per curiam) (summarily affirming conclusion that

prisoner's due-process rights were not violated when he was forced to sign a legal

document before his admission to a halfway house as a special condition of his

supervised release).  The Complaint does not indicate the nature of the document that

David was allegedly coerced into signing, and does not state any facts suggesting that he

suffered any deprivation of life, liberty, or property as a consequence of the signing.[18]

Plaintiffs have therefore failed to state a claim against Defendants Wade, Mathieu,

Fortier, and Poginy.

---

[18]  At the November 13, 2013 hearing, David explained that he objected to signing the paperwork because doing so would violate his oath as a "free sovereign."  The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."  *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013).  Sovereign citizens apparently also believe that, by entering into contracts with the federal government or by receiving benefits from it, they lose their birthright of sovereign citizenship.  Francis X. Sullivan, Comment, *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 1999 Wis. L. Rev. 785, 798 (1999).  The "sovereign citizen" ideology has been described by other courts as "completely without merit," "patently frivolous," *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), and having "no conceivable validity in American law," *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990).  The Court therefore concludes that, to the extent David's claims are premised on his rights as a "free sovereign," they fail.

### 4.    John Does

Although not listed in the Complaint's caption, Plaintiffs assert that "John Does" failed to allocate sufficient food to David and failed to provide David with medical treatment.  (Doc. 6 at 11, ¶ 27.)  The Court presumes that the John Does were employees or officers at NSCF during David's 88-day incarceration there.  The John Does are apparently the individuals who denied David his mental health medication for three weeks, and denied him a special diet to accommodate his fish allergy.

The Attorney General suggests that, to the extent that the John Does are state actors, any claims against them should be dismissed because the pseudonyms do not appear in the caption of the Complaint as required by Fed. R. Civ. P. 10(a).  The Court rejects that argument.  "Although Rule 10(a) of the Federal Rules of Civil Procedure requires that every party to an action be named in a complaint's caption, the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim."  *Heicklen v. U.S. Dep't of Homeland Sec.*, No. 10 Civ. 2239(RJH)(JLC), 2011 WL 3841543, at *10 n.12 (S.D.N.Y. Aug. 30, 2011).[19]

The Attorney General does not seek dismissal of the claims against the John Does on any basis other than Rule 10(a).  The Court may not dismiss an action for failure to state a claim based upon grounds not raised or briefed by the parties.  *See Volvo N.A. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 65 (2d Cir. 1988).  However, in

---

[19] This Court finds *Gilhooly v. Armstrong* unpersuasive insofar as it held that failure to list John Does in the caption—but referred to elsewhere in the complaint—meant that they were not defendants in the case.  No. 3:03 CV 1798 MRK WIG, 2006 WL 322473, at *2 (D. Conn. Feb. 9, 2006).  In any event, the result in that case was not dismissal of the claims against the John Does, but rather denial of the motion to dismiss the claims as moot.  *Id.*

their Motion to Dismiss, Officers Kirkpatrick and Ross asserted that, assuming they were responsible for withholding medication or pushing a fish diet, the circumstances do not rise to the level of a serious medical condition.  (*See* Doc. 34 at 11.)  The Court therefore concludes that the objective component of the Eighth Amendment analysis has been raised and briefed—even if not by the Attorney General—and that it is proper for the Court to consider it.  *Cf. United States v. Mojac Constr. Corp.*, 190 F. Supp. 622, 631 (E.D.N.Y. 1960) (where reasons for summary judgment for some cross-claim defendants were equally applicable to other cross-claim defendants who had not moved for summary judgment, no purpose would be served in requiring them to move specially for judgment); *see also, e.g.*, *Gray v. Bagley*, Civil No. JFM-11-1117, 2011 WL 8227134, at *1 (D. Md. July 28, 2011) (granting defendants' motion to dismiss, including claims against non-moving defendant who had not been served).

As noted above, because David was a pretrial detainee at the time of the alleged deprivations, the Due Process Clause of the Fourteenth Amendment—rather than the Eighth Amendment—applies here.  But the distinction makes no difference because the analysis is the same under either Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 70–71 (2d Cir. 2009).  In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  A prisoner must therefore demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently

culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994).  Both the objective and subjective components must be satisfied in order for a plaintiff to prevail. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  *Estelle*'s requirement applies to psychiatric and mental health care as well as physical health care.  *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989).

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment, the impact of the ailment upon an individual's daily activities, and the severity and persistence of pain.  *See Chance v. Armstrong*, 143 F .3d 698, 702 (2d Cir.1998).  "The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue."  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).  A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Chance*, 143 F.3d at 702.  The Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998).  Where, as here, a prisoner claims a temporary delay or interruption in the provision of otherwise adequate medical treatment, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" in performing the objective analysis. *Smith*, 316 F.3d at 185.

Plaintiffs' conclusory statement that David suffered "starvation" as a result of not being able to eat the fish served at NSCF is not sufficient to avoid dismissal.  It is true that "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam).  Allegations that would be sufficient to survive a motion to dismiss include assertions that an inmate was served only one meal a day, or was deprived of all food for four consecutive days. *Id.* at 15–16.  The allegations in this case fall short of such deprivations.  There is no suggestion that fish was the only food served at meals.  Even assuming that fish was frequently part of the menu, Plaintiffs have not alleged that David's medical need to forego eating the fish that was served resulted in death, degeneration, or extreme pain. *See Williams v. Lamas*, No. 08-5520RJB/JRC, 2009 WL 1615525, at *3 (W.D. Wash. June 9, 2009) (granting motion to dismiss because inmate, who had potentially fatal fish allergy, did not allege any serious physical or emotional injury as a result of the decision not to provide a no-fish alternative).

As to Plaintiffs' claim regarding the deprivation of medication, since a mental health facility prescribed medication to David, the Court presumes that he had been diagnosed with and suffered from serious underlying mental health conditions.  Of course, the focus for present purposes is not on the underlying conditions but on the effect of the interruption in treating them.  Plaintiffs do not allege any consequences stemming from the denial of David's mental health medication; the only allegation is that David was deprived of the medication for three weeks.  Plaintiffs have not alleged that David's symptoms presented an urgent situation that might produce death, degeneration,

or extreme pain.  *See Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 237 (2d Cir. 2007) (risk of harm was not substantial where alleged missed medication dosages and inadequate monitoring of medications resulted in an anxiety attack but no physical injuries or "acute distress"); *Hamm v. Hatcher*, No. 05 Civ. 403(ER), 2013 WL 71770, at *9 (S.D.N.Y. Jan. 7, 2013) (no significant risk of serious harm where delay in access to medication allegedly resulted in "exacerbated depression, nightmares, hopelessness, and suicidal thoughts").  Plaintiffs have presented no evidence that, without his medication, David's underlying mental health conditions worsened, he suffered an acute or extreme mental health consequence, or he was in immediate danger of doing physical harm to himself.  To the extent that Edward alleges similar deprivations of medication, his claim fails for the same reasons.

### 5.    Defendant Goode

Plaintiffs assert that Defendant Bonnie Goode's decision not to remove David's name from the Vermont Sex Offender Registry "constitutes a legal judgment against [David]" and is a "clear violation of the Right to a fa[ir] trial."  (Doc. 6 at 11.)  Goode maintains that Plaintiffs have failed to state a claim on these grounds, and that she is entitled to qualified immunity.

"The right to a fair trial is guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment."  *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)) (alterations omitted). "While '[t]he Constitution guarantees a fair trial through the Due Process Clauses, . . . it defines the basic elements of a fair trial largely through the several provisions of the

Sixth Amendment.'"  *Id.* (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006)).  Here, Goode's refusal to remove David's name from the Vermont Sex Offender Registry was neither a "trial" nor a court "judgment."  At best, Plaintiffs attempt to assert a due-process claim—not arising out of an unfair trial, but out of Goode's allegedly improper decision to retain David's name on the Vermont Registry.

Plaintiffs' § 1983 claims against Goode fail because Vermont provides adequate post-deprivation proceedings in the form of an administrative process for individuals who believe they are improperly on the Registry.  The Complaint does not suggest that Goode's refusal to remove David from the Registry was part of any established state procedure.  Rather, reading the Complaint liberally, it alleges that Goode's refusal to do so was a random and unauthorized act.[20]  In that circumstance, the Due Process Clause is not violated as long as the State provides a "meaningful post[-]deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).

The State of Vermont provides a post-deprivation remedy for individuals who believe they are improperly on the Registry or the Vermont Sex Offender Registry web site:

> An individual who believes that he or she is improperly on the sex offender registry or on the Vermont Sex Offender Registry Web Site, or who believes that incorrect information is included in the registry or on the Vermont Sex Offender Registry Web Site may challenge his or her status by contacting the Director [of the Vermont Crime Information Center] in

---

[20]  It is unclear how a document from Maine could compel a Vermont official to remove an individual's name from the Vermont Registry.  But the Court assumes for present purposes that Goode's refusal to remove David's name from the Registry was unauthorized.

> writing.  The Director, or his or her designee, in cooperation with DOC, shall investigate the alleged discrepancy within 3 business days of receipt of notification.   The Director is limited to correcting clerical errors, reviewing orders from the Court, confirming the identity of registrants and researching matters of law.

Code of Vt. Rules 28-050-002, § 5.1 (2013), *available at* http://www.lexisnexis.com/ hottopics/codeofvtrules (click "I Agree" and navigate to "Agency 28," then to "Sub-Agency 050," and then "Chapter 002"; click on the "28 050 002" hyperlink).[21]

Moreover, judicial review of the Director's determination is potentially available under V.R.C.P. 75.  The Court concludes that this remedy is meaningful, and Plaintiffs have therefore failed to state a claim against Goode for any due-process violation.

## VI.    Attorney's-Fees Claim under 42 U.S.C. § 1988

Several Defendants maintain that, even if Plaintiffs prevail on any of their claims, they would not be entitled to recover attorney's fees under 42 U.S.C. § 1988 because *pro se* plaintiffs who are not lawyers are not entitled to such fees under that provision.  (Doc. 34 at 8–9; Doc. 49 at 4 n.4.)  The Court concurs, *see Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (cases holding that a *pro se* litigant who is not a lawyer is not entitled to attorney's

---

[21] The cited Rule is in accordance with 13 V.S.A. § 5402(c), which authorizes the Vermont Departments of Corrections and of Public Safety to adopt rules to implement the provisions of Vermont law concerning sex offender registration.  A similar notice appears on the Vermont Criminal Information Center's website:

> An individual who believes that they are not required to have their information posted on the Vermont Sex Offender Registry web site, or who believes the information on the web site contains errors, may challenge their status by contacting the Director of the Vermont Criminal Information Center in writing clearly identifying themselves, the information in question and the reason the information is in error. The Director, or a designee, will investigate and resolve the alleged discrepancy within three (3) business days of receipt of the complaint.

Vermont Criminal Information Center, Internet Information, http://vcic.vermont.gov/sex_offender/ internet (last visited Nov. 25, 2013).

fees were correctly decided),[22] and thus concludes that Plaintiffs' § 1988 claims against all Defendants should be dismissed.

## VII.   Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, Plaintiffs have not previously amended their Complaint, and it is possible that better pleading might cure some of the problems with Plaintiffs' claims.  The Court will therefore grant leave to amend.  Any amended filing shall be entitled "Amended Complaint" and must contain all claims against all parties as it will supersede the original Complaint in all respects.[23]  An Amended Complaint, if any, shall be filed within 30 days of the filing of this Opinion and Order.  Failure to amend will result in the dismissal with prejudice of all claims that are the subject of the pending Motions (Docs. 34, 35, 49, 50).

---

[22] The holding in *Kay* was that even a *pro se* litigant who *is* a lawyer is not entitled to attorney's fees under § 1988.  *Id.* at 438.

[23] Consistent with Fed. R. Civ. P. 10(a) and the discussion in Part V.C.4 above, Plaintiffs should include the "John Does" in the caption of any Amended Complaint if Plaintiffs intend to maintain claims against those individuals.

## Conclusion

Defendants Troy Kirkpatrick and Weiland Ross's Motion for Partial Dismissal (Doc. 34) is GRANTED.  Defendant the City of Barre's Motion to Dismiss (Doc. 35) is GRANTED.  The State Defendants' Motion to Dismiss (Doc. 49) is GRANTED.  Defendant Judge Howard VanBenthuysen's Motion to Dismiss (Doc. 50) is GRANTED.  Plaintiffs are allowed 30 days to file an Amended Complaint.  Failure to so amend will result in the dismissal with prejudice of all claims that are the subject of the pending Motions (Docs. 34, 35, 49, 50).

Dated at Burlington, in the District of Vermont, this 9th day of December, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge