UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Gauthier, Edward Gauthier,

      Plaintiffs,

      v.                                           Civil Action No. 2:13-cv-187

Troy Kirkpatrick, Barre, Vermont,
Weiland Ross, Judge Howard VanBenthuysen,
Newport Correctional Facility, Rick Wade,
Michael Mathieu, Nicholas Fortier,
Jeff Poginy, Thomas Kelly, Megan Campbell,
State Trooper Leblanc, State Trooper Maurice,
Bonnie Goode, Tiffany Stark,

      Defendants.

## **AMENDED OPINION AND ORDER**[1]
(Docs. 81, 87)

Plaintiffs David Gauthier and Edward Gauthier, proceeding *pro se*, bring this suit under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution against Defendants Tiffany Stark, the City of Barre and its "municipal judges," the "Newport Correctional Facility,"[2] and various state and municipal officials, each in their personal and official capacities. (Doc. 6 at 1–6.) Plaintiffs' claims stem from their seizure or arrest in January 2012, the proceedings in David Gauthier's state-court criminal case, and Plaintiffs' treatment at correctional

---

[1] The Court issues this Amended Opinion and Order amending its original Opinion and Order (Doc. 99) to address Plaintiffs' September 8, 2014 filing (Doc. 100).

[2] The Court previously remarked that Plaintiffs' claims against the "Newport Correctional Facility" are directed against Vermont's Northeast State Correctional Facility. (Doc. 60 at 1 n.1.)

facilities during the state-court proceedings. Plaintiffs seek $6.825 million in compensatory damages and $850,000 in punitive damages against all Defendants jointly and severally, as well as costs and attorney's fees. (*Id.* at 12.)

The Court previously dismissed all of Plaintiffs' claims against all Defendants except for Plaintiffs' claims against Ms. Stark and their Fourth Amendment claim against Barre police officers Weiland Ross and Troy Kirkpatrick. (Doc. 67 at 2.) Two Motions are currently pending: Ms. Stark's Motion to Dismiss for Failure to State a Claim (Doc. 81), and Ross and Kirkpatrick's Motion to Dismiss for Lack of Prosecution (Doc. 87). Plaintiffs have not filed a written opposition to either Motion.

The Court held a hearing on the pending Motions on August 21, 2014. All parties have consented to direct assignment to the undersigned Magistrate Judge. (Docs. 33, 37, 38, 41, 53, 55.) For the reasons discussed below, the Court GRANTS Ms. Stark's Motion to Dismiss (Doc. 81) and GRANTS Kirkpatrick and Ross's Motion to Dismiss (Doc. 87).

## Background

Most of Plaintiffs' factual allegations are recited in the Court's December 9, 2013 Opinion and Order (Doc. 60), familiarity with which is presumed. The seizure or arrest underlying the bulk of Plaintiffs' claims was, according to the Complaint, precipitated by Defendant Tiffany Stark:

> Defendant Tiffany Stark asked the Washington Family court for a Temporary Restraining Order (TRO). According to Vermont law the person filing for the TRO must show imminent danger to themselves or their children. In order to fill this requirement, Tiffany Stark had to [perjur] herself to the judge to fill this requirement. Why was this a lie. David

>Gauthier was incarcerated in Texas at the time. In fact not a threat of any kind to Tiffany or her child. Furthermore Tiffany Stark set about setting up traps in down town [sic] Barre in order to get David Gauthier arrested for violations of the TRO. She would hide in a door way in down town [sic] Barre and wait for David Gauthier to pass by. The first two violations of the TRO were done in this [manner]. The third Violation was a response by Edward Gauthier to fill a request by Tiffany Stark for medical information for her daughter. Tiffany Stark believed it was his brother, and called the police and that was the reason the police were at Edward's apartment. David Gauthier has [a] series of communications that will show the court that Tiffany Stark was planning this attempt at devious behavior for quite a while.

(Doc. 6 at 11–12.) Procedural history and other factual background relevant to Ross and Kirkpatrick's Motion are set forth below.

## Analysis

### I.  Ms. Stark's Motion to Dismiss

#### A.  Rule 12(b)(6) Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). The Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences from those allegations in favor of Plaintiffs. *Nielsen*, 746 F.3d at 62. Plaintiffs' Complaint is facially plausible only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citation omitted) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Even though Ms. Stark's Motion to Dismiss is unopposed, that fact alone does not justify dismissal; the Court must still determine the sufficiency of the Complaint as a matter of law. *See Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010).

### B. Failure to State a Claim Against Ms. Stark

Ms. Stark argues that Plaintiffs have failed to state a claim against her under 42 U.S.C. § 1983 because there is no allegation of any state action. (Doc. 81 at 3–4.) The Court agrees. As the Second Circuit has explained, "[t]o state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). Here, there is no allegation that Ms. Stark was acting in any capacity other than as an individual at the relevant times. Thus, her actions were only under color of state law if:

> "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']."

*Id.* (alterations in original) (quoting *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009)).

Plaintiffs' Complaint makes no allegations that might satisfy any of those three tests. There is no allegation that the State compelled her conduct, that there was any

4

close nexus between the State and her conduct, or that she was carrying out some public function. Accordingly, Plaintiffs have failed to state a § 1983 claim against Ms. Stark.

Ms. Stark further argues that Plaintiffs have failed to state any other claims against her. (Doc. 81 at 4.) Specifically, she notes that the Complaint fails to identify any perjurious statement in any detail, and that there is in any case no cognizable civil claim for perjury. (*Id.*) The Court agrees that there is no cognizable civil claim in Vermont for perjury. *See* 13 V.S.A. § 2901 (crime of perjury); *State v. Parker*, 151 Vt. 378, 379, 560 A.2d 383, 385 (1989) (executive branch is the "exclusive charging authority"); *see also Sinha v. Kina*, No. 2006-022, 2006 WL 5838954, at *2 n.1 (Oct. 2006) (unpublished mem.) (declining to address tenants' perjury claim, noting that perjury is a criminal offense). Moreover, Plaintiffs do not invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332, (*see* Doc. 6 at 5),[3] and all of Plaintiffs' federal claims fail. Thus there is no basis for this Court to adjudicate any state-law claim that Plaintiffs might be alleging against Ms. Stark, whether it be perjury, abuse of process, or otherwise.

To the extent that Plaintiffs are attempting to assert a conspiracy claim against Ms. Stark under 42 U.S.C. § 1985, they must allege some "meeting of the minds" among some Defendants such that they entered into an agreement to achieve an unlawful end. *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). Here, there is no allegation that Ms. Stark entered into any agreement with respect to her alleged perjury or her efforts to "trap" David Gauthier in a violation of the TRO. Since Plaintiffs have failed to state a

---

[3] Diversity jurisdiction is not available because it appears that all of the parties are Vermont citizens.

§ 1985 claim against Ms. Stark, they have also failed to state a claim under 42 U.S.C. § 1986.  (*See* Doc. 60 at 10–11.)  And, as the Court previously concluded, Plaintiffs cannot assert a claim for attorney's fees under 42 U.S.C. § 1988.  (*See id.* at 41–42.)

  **C.**  **Leave to Amend**

  The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Nevertheless, leave to amend may be denied in certain circumstances, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

  Here, it does not appear that any amendment would be likely to cure the defects in Plaintiffs' claims against Ms. Stark.  Moreover, as discussed below, Plaintiffs have caused undue delay in this case.  *See Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (failure to prosecute supported denial of leave to amend on grounds of undue delay).  The Court accordingly concludes that leave to amend should be denied in this case.

## II.     Ross and Kirkpatrick's Motion to Dismiss

Defendants Kirkpatrick and Ross seek dismissal of Plaintiffs' claims against them under Fed. R. Civ. P. 37(b)(2)(A), (d)(1)(A)(ii), and 41(b).  (Doc. 87 at 1.)  The Court begins by describing the relevant factual and procedural background, drawing on the record in this case as well as the Certification of Counsel filed in support of the Motion (Doc. 87-1).  The Court then turns to analyze Ross and Kirkpatrick's Motion.

### A.     Factual and Procedural Background

In early February 2014, counsel for Ms. Stark forwarded to Plaintiffs a discovery schedule that had been executed by Nancy Sheahan, Esq.—counsel for Kirkpatrick and Ross—requesting that Plaintiffs sign it and file it with the Court.  (Doc. 87-1, ¶ 2; Doc. 87-2.)  On February 10, 2014, Attorney Sheahan wrote Plaintiffs and advised that if they did not respond or file the schedule by February 13, 2014, she would request that the Court approve the proposed schedule.  (Doc. 87-1, ¶ 3; Doc. 87-3.)  On February 14, 2014, after Plaintiffs had failed to respond to Attorney Sheahan's February 10 letter, she filed a Motion to Adopt Discovery Schedule (Doc. 68).  (Doc. 87-1, ¶ 4.)  Plaintiffs did not respond, and on March 5, 2014, the Court granted the Motion.  (Doc. 70.)

On March 6, 2014, Attorney Sheahan served Plaintiffs with Initial Disclosures.  (Doc. 72.)  Plaintiffs did not serve their Initial Disclosures as required by the discovery schedule.  Also on March 6, 2014, Attorney Sheahan served Plaintiffs with a First Set of Interrogatories and Requests to Produce.  (Doc. 71.)  When Attorney Sheahan did not receive any discovery responses, she wrote to Plaintiffs in a letter dated April 11, 2014

7

advising them that their answers were overdue, and requesting responses by April 17, 2014. (Doc. 87-1, ¶ 8; Doc. 87-4.) When she again did not receive any response from Plaintiffs, Attorney Sheahan wrote Plaintiffs a letter dated April 21, 2014, requesting a response by May 1, 2014. (Doc. 87-1, ¶ 9; Doc. 87-5.)

Having received no response from Plaintiffs, Attorney Sheahan wrote them on May 1, 2014 stating that if she did not hear from them by May 9, 2014, she would file a motion to compel. (Doc. 87-1, ¶ 11; Doc. 87-6.) Plaintiffs did not respond, and Attorney Sheahan filed a Motion to Compel Discovery on May 22, 2014. (Doc. 80.) Plaintiffs did not file any response to the Motion. The Court granted the Motion to Compel on June 10, 2014, ordering Plaintiffs to respond by June 30, 2014. (Doc. 85 at 1.) In that Order, the Court specifically warned Plaintiffs that failure to comply with their discovery obligations could result in sanctions, including dismissal. (*Id.* at 1–2.)

Meanwhile, Plaintiffs participated in an Early Neutral Evaluation (ENE) session held on June 4, 2014. (Doc. 83.) The ENE session did not result in any settlement. (*See id.*)

On June 13, 2014, Defendants Ross and Kirkpatrick moved to extend the discovery schedule "in response to Plaintiffs' delay in providing basic discovery." (Doc. 86 at 2.) Plaintiffs filed no opposition, and the Court granted the motion on July 15, 2014. (Doc. 88.) Defendants Ross and Kirkpatrick filed their Motion to Dismiss for Lack of Prosecution on July 3, 2014. (Doc. 87.)

On July 22, 2014, Attorney Sheahan filed a letter advising that the copy of the Motion to Dismiss mailed to the address Plaintiffs had provided was returned on

8

July 18, 2014 with an indication that Plaintiffs no longer reside at that address. (Doc. 90 at 1.) Attorney Sheahan indicated that she had reason to believe that Plaintiffs were residing at a different address in Barre, Vermont, and advised that she was attempting to serve Plaintiffs at that new address. (*Id.*) Also in July 2014, certain correspondence from the Court to Plaintiffs was returned as undeliverable. (Docs. 91, 92.) The clerk re-sent that correspondence to Plaintiffs' new Barre, Vermont address on August 5, 2014.

The penultimate document filed by either Plaintiff in this case was a Response filed by Edward Gauthier on December 23, 2013 (Doc. 62). Plaintiffs have not filed any notification under L.R. 11(c) of a change of address.

Plaintiffs did appear at the August 21, 2014 hearing. At that hearing, the Court heard from Plaintiffs and advised them that it would take the case under advisement, and explicitly stated that Plaintiffs must comply with their discovery obligations within 15 days. That 15-day period has now elapsed, and Plaintiffs have filed no discovery certificates or any other indication of compliance with their discovery obligations.

On September 8, 2014, Plaintiffs did file a six-page document in this case. (Doc. 100.)[4] That document came to the attention of the undersigned on the same morning that the Court's original Opinion and Order granting the pending Motions was filed (Doc. 99). Plaintiffs' September 8, 2014 contains three handwritten pages recapitulating some of Plaintiffs' factual allegations and two typewritten pages citing various cases and statutory provisions.

---

[4] The September 8, 2014 filing does not contain a caption or docket number, and thus does not comply with Fed. R. Civ. P. 7(b)(2) and 10(a). The clerk nevertheless accepted the filing, *see* Fed. R. Civ. P. 5(d)(4), and the Court considers it here in light of Plaintiffs' *pro se* status.

9

### B. Dismissal for Failure to Prosecute

Under Fed. R. Civ. P. 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." In evaluating whether to dismiss a case for failure to prosecute under Rule 41(b), the Court considers whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the . . . efficacy of lesser sanctions.

*Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). No one factor in that test is dispositive; rather, the Court considers the record as a whole. *Id.*

Here, Plaintiffs have been largely absent from this case for more than eight months. They did attend the June 4, 2014 ENE session and the August 21, 2014 hearing, but they have otherwise not participated in discovery or any other aspect of the case. A review of the Court docket indicates that, with the exception of Plaintiffs' September 8, 2014 filing (Doc. 100), Plaintiffs have not filed any discovery certificates, pleadings, or briefs since Edward Gauthier's Response on December 23, 2013 (Doc. 62). Plaintiffs failed to notify the Court of their change of address. They have also not filed written responses to either of the Motions to Dismiss.

Plaintiffs were given notice that further delay could result in sanctions, including dismissal. (Doc. 85 at 1–2.) The Court has taken care to strike a balance between

alleviating calendar congestion and protecting Plaintiffs, who appear *pro se*, by providing additional time to comply with discovery requests.  The Court also scheduled a hearing on the pending Motions to give Plaintiffs an additional opportunity to articulate their position.  However, as a result of Plaintiffs' failure to comply with this Court's orders, Defendants have been prejudiced by delay.  In addition, Plaintiffs' accusations of "serious constitutional violations" constitute a "cloud" over Ross and Kirkpatrick's names, and delay in resolution of the accusations is prejudicial, or at least foreseeably so. *Hardimon v. Westchester Cnty.*, No. 13 Civ. 1249(PKC)(MHD), 2014 WL 2039116, at *2 (S.D.N.Y. May 16, 2014).

      The Court has considered the efficacy of lesser sanctions, but finds that no lesser sanction would be effective.  The Court's prior warning about the need to comply with discovery obligations appears to have gone unheeded.  Plaintiffs have also failed to comply with the 15-day deadline that the Court set at the August 21, 2014 hearing.  Plaintiffs' September 8, 2014 filing does not alter that conclusion.  The document is not responsive to any of Plaintiffs' discovery obligations, nor does it mention any action by Plaintiffs to comply with those obligations.  Limiting discovery is not viable as Plaintiffs have not sought any discovery.  And since Plaintiffs are proceeding *in forma pauperis* (*see* Docs. 5, 8), they would presumably be unable to pay a monetary sanction.  Accordingly, the Court concludes that Plaintiffs have failed to comply with this Court's orders, and with their obligations under the Federal Rules of Civil Procedure, and that dismissal of this action with prejudice under Rule 41(b) is appropriate.

### C. Dismissal for Failure to Comply with Discovery Obligations

Alternatively, Plaintiffs' failure to comply with their discovery obligations and with the Court's June 10, 2014 discovery Order (Doc. 85) warrants dismissal under Fed. R. Civ. P. 37. In deciding whether to impose sanctions under Rule 37, the Court considers the following factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted). These factors are similar to those analyzed under Rule 41(b).

Here, Plaintiffs' failures to comply with their discovery obligations have been persistent since the Court adopted the discovery schedule in March 2014, when Plaintiffs failed to file Initial Disclosures and failed to respond to Ross and Kirkpatrick's First Set of Interrogatories and Requests to Produce. Despite multiple letters from Attorney Sheahan, by May 2014 Plaintiffs had still failed to act. They also failed to file any response to the resulting Motion to Compel, and failed to comply with the Court's order to provide discovery by June 30, 2014. The Court gave Plaintiffs an additional opportunity to comply at the August 21, 2014 hearing, but Plaintiffs still failed to do so. Their September 8, 2014 filing (Doc. 100) does not constitute compliance with their discovery obligations. The Court can only conclude that these repeated failures demonstrate Plaintiffs' willful noncompliance. Moreover, the lengthy duration of the noncompliance also weighs in favor of a sanction. The Court explicitly warned Plaintiffs

of the consequences of noncompliance.  (Doc. 85 at 1–2.)  Finally, as discussed above, the Court has considered lesser sanctions but has concluded that no sanction other than dismissal will be effective.

## **Conclusion**

For the above reasons, the Court GRANTS Tiffany Stark's Motion to Dismiss (Doc. 81) and GRANTS Troy Kirkpatrick and Weiland Ross's Motion to Dismiss (Doc. 87).  Accordingly, this case is DISMISSED.

Dated at Burlington, in the District of Vermont, this 11th day of September, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge